**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| INNOVATIVE INTERFACES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. _____ |
| EBSCO PUBLISHING, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT

COMES NOW Plaintiff Innovative Interfaces, Incorporated ("Innovative") and submits this Complaint against Defendant EBSCO Publishing, Inc. ("EBSCO"), stating as follows:

### NATURE OF THE ACTION

1.      Innovative is a specialized software company focused on providing integrated systems for library resources management. EBSCO is a company that, among other things, provides indexing services for library resource management systems and an interface for searching across a library's content using a single search function, which is known as EBSCO Discovery Service ("EDS").

2.      Innovative and EBSCO are parties to a contract, EBSCO Discovery Service Partnership and Reciprocal Access to Content Search and Technology Agreement (the "Partnership Agreement"), pursuant to which, among other things,

- 1 -

Innovative sold a suite of products to its library customers called Encore Duet, and such customers would use Innovative's products and platform to access and utilize EBSCO's EDS.

3.      EBSCO recently purported to terminate the Partnership Agreement, and when negotiations between the parties broke down, EBSCO—without warning to Innovative—began contacting Innovative's contracted customers to disrupt their relationship with Innovative and lure Innovative's customers into acquiring EDS as a standalone product.

## PARTIES

4.      Innovative is incorporated in California, and maintains its principal place of business at 1900 Powell Street, Suite 400, Emeryville, California 94608.

5.      EBSCO is incorporated and maintains its principal address in Alabama. EBSCO maintains an office at 10 Estes Street, Ipswich, Massachusetts 01938.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and

- 2 -

§ 1391(c)(2) in that EBSCO maintains a business office and continuous presence in this state and is therefore subject to the Court's personal jurisdiction.

## FACTS COMMON TO ALL COUNTS

### A.    Innovative's Partnership with EBSCO

8.    Both Innovative and EBSCO operate in a highly competitive space involving a finite pool of potential library customers. In an effort to remain competitive, Innovative and EBSCO negotiated a partnership whereby EBSCO's EDS product could be packaged and sold with Innovative's platform to provide an alternative, preferred user-experience to library customers. The marriage of these two technologies is known and marketed in the industry as "Encore Duet."

9.    On or about August 28, 2012, Innovative and EBSCO entered into a Partnership Agreement, which was subsequently amended on or about June 25, 2013 and December 18, 2014.  A true and correct copy of the Partnership Agreement and its subsequent amendments are attached hereto as Exhibits A, B and C, respectively.

10.    The Partnership Agreement carried an initial three (3) year term, and was subject to automatic renewals for successive three (3) year terms unless earlier terminated per the Partnership Agreement's termination provisions.

11.    The Partnership Agreement successfully renewed in or about August 2015.

13505131v2

12.     Among other things, pursuant to the terms of the Partnership Agreement, the parties agreed that Innovative would sell subscriptions to EBSCO's EDS product, including in the Encore Duet suite.  (*See* Exhibit A § 4.1.)

13.     For sales of Encore Duet, Innovative earned a commission of 50% of Net Revenue on Related Sales, which was defined as the amount invoiced to the customer for the EDS portion of Encore Duet (less taxes and service charges) to those customers who were not legacy EDS customers.  (*Id.* at § 5.4.)

14.     In selling Encore Duet, Innovative would request a price quote for EDS from EBSCO, which was then used to build the offer or bid that is delivered to the customer. Specifically, the Partnership Agreement provided that "Innovative shall request pricing for prospects from EBSCO and EBSCO shall deliver pricing within five (5) business days." (*Id.* at § 5.5.)

15.     If the library customer accepted, Innovative would enter into software subscription agreements directly with the library-customer. Many of those agreements are multi-year agreements with automatic renewal terms.

16.     Thereafter, per the terms of the Partnership Agreement, Innovative would process the sale and invoice the customer. When the customer paid the invoice, Innovative would pay over that portion of the payment attributable to EDS, less the 50% commission it earned, to EBSCO. Indeed, the Partnership Agreement

- 4 -

calls for "Innovative to pay EBSCO on sales of EDS processed by Innovative." (*Id.* at § 5.4.)

17.     Since 2012, Innovative has invoiced the customers to whom it sold Encore Duet, and upon receipt of payment, has remitted the EDS balance (less Innovative's commission) to EBSCO.

18.     EBSCO agreed that the price it provided to Innovative for EDS to be used in conjunction with Encore Duet "will not be greater than the price of EDS on EBSCO's platform for the same customer or unique set of customers." (*Id.* at § 5.6.)

19.     The parties further agreed that they would work together to establish the sales process to be followed for sales of EDS by Innovative and to aggressively market Encore Duet. (*Id.* at § 5.8.)

**B.     Innovative and EBSCO's Unsuccessful Negotiations of New Terms**

20.     On or about May 29, 2018, EBSCO sent an email to Innovative (contrary to the notice provisions contained in the Partnership Agreement) in which it stated that it would not be renewing the parties' Partnership Agreement. Nevertheless, EBSCO stated that it had "every intention of negotiating an ongoing agreement in good faith and continuing to work in partnership with Innovative Interface[] for years to come. I therefore send this notice simply as a prudent step to cover the bases in the contract language and out of an abundance of caution and

practicality." (emphasis in original).  A true and correct copy of the May 29, 2018 email from EBSCO to Innovative is attached hereto as Exhibit D.

21.    Thereafter, the parties began negotiating in earnest the terms of a new agreement. The parties, however, expressly agreed that they would continue to operate under the terms of the Partnership Agreement until the parties reached a new agreement or an impasse in negotiations.

22.    And, in practice, the parties continued to operate under the Partnership Agreement, while negotiating new terms for a replacement agreement, for many months following the August 28, 2018 renewal date. During that time, EBSCO continued to provide Innovative with pricing on EDS for customer bids, continued to assist in requests for proposal to prospective clients, and continued to acknowledge new Encore Duet sales and/or renewals.

23.    On or about April 18, 2019, however, EBSCO indicated that it wanted to terminate *part* of the Partnership Agreement, namely the term that provided Innovative with the 50% commission on sales of EDS through Encore Duet. EBSCO, however, stated that it wanted to keep the other terms of the Partnership Agreement intact. EBSCO then offered two proposals for how it might effectuate the termination of Innovative's revenue share under the Partnership Agreement, while maintaining other aspects of the parties' contract. In or about late April/early May 2019, the parties' negotiations reached a true impasse regarding how to

proceed. A true and correct copy of the April 18, 2019 email from EBSCO to Innovative is attached hereto as Exhibit E, at 4-5.

**C.    EBSCO's Preemptive Attack on Innovative's Business**

24.    Even prior to the breakdown of the parties' negotiations, however, EBSCO began trying to undermine the Encore Duet business established pursuant to the parties' Partnership Agreement by aggressively (and improperly) marketing directly to Innovative's customers and luring them to terminate their agreements with Innovative.

25.    For example, in or about late March/early April 2019, EBSCO contacted a representative of the University of the South, a known Encore Duet customer with whom Innovative had a software subscription agreement that ran through June 2021. In direct violation of the Partnership Agreement, EBSCO undercut Innovative's pricing for Encore Duet by offering EDS directly to the University of the South for free using EBSCO's own platform. In reliance on EBSCO's offer, the University of the South provided notice to Innovative that it was terminating its software subscription agreement, effective December 31, 2019.

26.    On information and belief, EBSCO contacted several other Encore Duet clients who were under contract with Innovative and induced them to take steps to discontinue their contractual relationship with Innovative. Indeed, Innovative received customer requests to cancel their subscription agreements with Innovative

for Encore Duet on February 11, 2019; February 22, 2019; March 29, 2019; and April 2, 2019.

27.    In addition, in or about late April 2019/early May 2019, EBSCO's sales force began contacting other Encore Duet customers—including those who are under long-term, multi-year contracts with Innovative—in a coordinated effort to obtain this business directly and cut Innovative out of the picture.

28.    As an avenue to entry with these customers, EBSCO's sales force told several customers that their contract was up for imminent renewal. In many instances, these statements were false.

29.    Not only does the Partnership Agreement expressly contemplate that Innovative would be entering into multi-year contracts with customers who subscribed to Encore Duet, but Innovative explicitly informed EBSCO on April 30, 2019 that Innovative carried the contracts with the Encore Duet customers and that "the customers are on multi-year agreements."  (*See* Exhibit E at 1.)

30.    Nevertheless, and as an example, EBSCO contacted St. Charles County Community College and informed the school that its contract with Innovative would renew on July 1, 2019 (meaning that it otherwise expired on June 30, 2019). EBSCO's representations to St. Charles County Community College were false. Indeed, St. Charles County Community College had signed a multi-year subscription agreement with Innovative for Encore Duet that does not expire until June 30, 2024.

- 8 -

31.     EBSCO's sales force also notified Encore Duet customers that, regardless of whether their contract was renewing, there would be a change in invoicing, such that future invoicing for the EDS portion of their product would come directly from EBSCO, instead of Innovative. Per the Partnership Agreement, however, Innovative has the right to invoice and process its sales of Encore Duet, not EBSCO.

32.     EBSCO further notified at least one existing Encore Duet customer who was on a multi-year contract that there would be an additional charge for the customer's subscription beginning August 1, 2019, when EBSCO planned to take over invoicing for the EDS component of Encore Duet.

33.     Indeed, on or about early May 2019, EBSCO contacted a representative of Washburn University Mabee Library and wrote:

> there is going to be a change regarding your current EDS subscription via Innovative coming up for August 1st, 2019. As of yesterday, I received notice that EBSCO and Innovative will not be partnering with their current discovery platform of EDS, Encore/Duet moving forward. What this means is that you have a couple of choices outlined below for your upcoming renewal.
>
> • **Option 1—You are able to keep EDS via Encore/Duet interface**. This would mean that your invoice would come directly from EBSCO (via me). . . . If you are happy with Encore Duet interface, there is only a minor charge in invoicing procedure as EBSCO will invoice for the EDS cost. You will need to contact Innovative directly regarding what the charge would be.

- 9 -

- **Option 2**—**Move to EDS Native Platform**—You are welcome to use the native EDS interface in place of Encore. This will be a cost savings for you as the Encore interface has a cost to it.

A true and correct copy of the correspondence from Washburn University Mabee Library, which incorporates EBSCO's messaging, is attached hereto as Exhibit F.

34.     This Encore Duet customer was naturally confused and concerned regarding the impact of this news from EBSCO on its four-year contract with Innovative.

35.     EBSCO also contacted other customers and spread misinformation regarding Innovative. For example, EBSCO contacted a consortium of customers in South Africa and suggested that Innovative had not been paying EBSCO the royalties due to EBSCO for EDS from the Encore Duet sales. This suggestion was false. Since the commencement of the Partnership Agreement, Innovative has remitted the payments due to EBSCO from Innovative's sales of Encore Duet through regular payments and periodic reconciliations with EBSCO's accounting group. EBSCO made these statements to these customers in an effort to undermine Innovative's goodwill and contractual relationship with them.

36.     On information and belief, EBSCO has also attempted to take control over the invoicing—for the first time in seven (7) years of operating under the

Partnership Agreement—in order to deprive Innovative of its earned commissions on these sales.

37.    In fact, EBSCO has taken the position that Innovative's right to receive commissions on existing Encore Duet sales did not survive the purported termination of the Partnership Agreement, and that Innovative has no further right to receive the commissions that were "earned" on "all years of multi-year contracts."

38.    The Partnership Agreement, however, unequivocally states: "Commissions shall be earned on subsequent successful annual renewals and on all years of multi-year contracts."  (*See* Partnership Agreement § 5.4.)

39.    As noted above, in direct contravention of the Partnership Agreement, EBSCO's sales force also offered Innovative's Encore Duet customers a "cost savings" if they would switch from Encore Duet to the standalone EDS product using EBSCO's interface.

40.    Notably, EBSCO did not notify Innovative of its plans to contact Encore Duet customers. Instead, Innovative first learned about EBSCO's coordinated assault from its customers. Indeed, numerous customers have contacted Innovative, disgruntled, concerned, and confused over the status of their contract with Innovative, the change in invoicing procedure, and a concern that they are being "double-billed" for a product they acquired as a bundled deal.

41.    These customers have inquired about breaking their agreements with Innovative, and have asked Innovative to renegotiate the terms of its agreements to something more favorable to the customer because "it's obvious that EBSCO is trying to get our business."

42.    The Partnership Agreement required EBSCO to obtain written approval from Innovative "prior to making any announcement or advertisement or releasing any information regarding this Agreement or the party's activities relating to its participation in this Agreement." (*See* Exhibit A § 15.1.)

43.    Yet, on information and belief, EBSCO began contacting Encore Duet customers regarding the Encore Duet product, EBSCO's standalone EDS offering, and the imminent dissolution of the partnership between EBSCO and Innovative prior to EBSCO's attempted termination of the Partnership Agreement on or about April 18, 2019 and without Innovative's approval, whether written or otherwise.

44.    EBSCO's conduct, as outlined above, constitute a breach of the terms of the Partnership Agreement, a breach of the duty of good faith and fair dealing, unfair competition, and tortious interference with the contracts between Innovative and its customers.

45.    Innovative's damages are in excess of $500,000.

- 12 -

## COUNT I

### BREACH OF CONTRACT

46.     Innovative repeats and re-alleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

47.     The Partnership Agreement is a valid, binding agreement.

48.     Innovative fully performed all its obligations under the Partnership Agreement.

49.     EBSCO breached the terms of the Partnership Agreement by, among other things: (i) undercutting Innovative's pricing on the EDS component of Encore Duet; (ii) taking over or attempting to take over the invoicing and payment for customers with long-term commitments for Encore Duet in order to deprive Innovative of its right to commissions under the Partnership Agreement; and (iii) notifying customers of information regarding the Partnership Agreement and activities related to the Partnership Agreement prior to the termination of the same and without Innovative's approval.

50.     Innovative has suffered damages as a direct result of EBSCO actions, including but not limited to the loss of customers, impairment of customer relationships and goodwill in the marketplace, and loss of commissions on multi-year Encore Duet sales, in an amount to be proven at trial.

13505131v2

## COUNT II

**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

51.     Innovative repeats and re-alleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

52.     The Partnership Agreement is a valid, binding agreement, containing duties and obligations by both Innovative and EBSCO.

53.     EBSCO owed Innovative a covenant of good faith and fair dealing not to do anything that would destroy or injure Innovative's right to receive the fruits of the Partnership Agreement.

54.     EBSCO breached that covenant by, among other things: (i) contacting Innovative's customers and injecting uncertainty into the relationship between Innovative and its customers; (ii) attempting to take over invoicing from Innovative in order to deprive Innovative of its right to earned commissions and/or to cause Innovative to breach its contracts with its customers; and (iii) spreading false information about Innovative to its customers.

55.     Innovative acted in good faith and dealt fairly with EBSCO at all times relevant to this matter.

56.     EBSCO failed to act in good faith or deal fairly with Innovative.

57.     Innovative was damaged and continues to be damaged by EBSCO's breach.

- 14 -

13505131v2

## COUNT III

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

58.     Innovative repeats and re-alleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

59.     Innovative has contracted directly with approximately ninety (90) customers, domestically and internationally, for subscriptions to Encore Duet pursuant to the Partnership Agreement.

60.     EBSCO contacted a number of those customers in a knowing attempt to induce them to break their contracts with Innovative.

61.     The means by which EBSCO attempted to induce Innovative's customers to break their contracts with Innovative were improper and were taken in reckless disregard for Innovative's rights.

62.     For example, EBSCO made misrepresentations of fact to several customers by telling customers that their contracts were "up" for renewal when, in fact, the customers still had years remaining on their multi-year contracts with Innovative.

63.     With yet other customers, EBSCO falsely informed the customers that EBSCO had the right to take over invoicing for the EDS portion of the Encore Duet bundle and to change the terms of the customer's pricing by imposing an additional charge, notwithstanding that the customer had signed a multi-year agreement.

13505131v2

64.     EBSCO also falsely suggested to customers that Innovative was not honoring the terms of its agreement with EBSCO regarding the payment of royalties, which was intended to cause the customer to distrust Innovative and/or to question Innovative's creditworthiness.

65.     As a result of EBSCO's intentional interference with Innovative's contracts with its customers, Innovative has been harmed, including through the loss of customers, the impairment of its customer relationships, and the time and effort it has taken to correct the misinformation spread by EBSCO and to preserve its contractual relationships.

## COUNT IV

## VIOLATION OF MASSACHUSETTS GEN. LAWS CH. 93A

66.     Innovative repeats and re-alleges the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

67.     Innovative and EBSCO are both engaged in business affecting commerce.

68.     EBSCO employed unfair and deceptive competitive trade practices in the conduct of trade or commerce in violation of G.L. c. 93A, §§ 2 and 11 by providing misinformation to Innovative's customers regarding the status of their contracts with Innovative, and specifically whether or not their contracts were "up"

- 16 -

for renewal or whether they were otherwise cancellable, and by otherwise tortiously interfering with Innovative's contractual relations.

69.    EBSCO's conduct was willful, intentional, and knowing insofar as EBSCO knew that Innovative had multi-year contractual commitments with its customers before EBSCO began calling the customers regarding "renewal," and yet EBSCO contacted these customers indiscriminately and without regard to the truth regarding the terms of these customers' contracts.

70.    EBSCO's communications to Innovative's customers caused confusion, distress, and uncertainty regarding the status of their agreements, and led them to question the terms of their relationship with Innovative and to seek to renegotiate the terms of their commitments with Innovative. Still others put in notices to cancel their subscription agreements with Innovative due to the statements and/or promises of EBSCO.

71.    EBSCO's sales force that contacted these customers were located substantially and primarily in Massachusetts.

72.    Moreover, Innovative entered into contractual arrangements with its customers pursuant to a Partnership Agreement that identified EBSCO as doing business in Massachusetts and providing that Massachusetts law would govern the parties' relationship.

73.     As a result of EBSCO's unfair and deceptive trade practices, Innovative has been harmed and damaged in an amount to be proven at trial.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Innovative hereby demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Innovative hereby respectfully requests that this Court:

A.     Enter judgment in favor of Innovative on all counts contained in this Complaint;

B.     Award Innovative its actual, compensatory damages;

B.     Award Innovative its costs and reasonable attorneys' fees;

C.     Award Innovative double or treble damages for violation of Ch. 93A;

D.     Award Innovative interest and post-judgment interest as permitted by law; and

E.     Award such other and further relief as this Court deems just and proper.

This 17th day of June 2019.

[*signatures appear on following page*]

- 18 -

13505131v2

ARNALL GOLDEN GREGORY LLP

/s/ Sara M. Lord
Sara M. Lord (BBO # 546918)

1775 Pennsylvania Ave., N.W., Suite 1000
Washington, DC 20006
Telephone:   202.677.4054
Facsimile:   202.677.4055
sara.lord@agg.com

*and*

/s/ Jennifer L. Shelfer
Richard A. Mitchell
Georgia Bar No. 513419
Richard.Mitchell@agg.com
Anuj Desai
Georgia Bar No. 193889
Anuj.Desai@agg.com
Jennifer L. Shelfer
Georgia Bar No. 557213
Jennifer.Shelfer@agg.com
171 17th Street NW
Suite 2100
Atlanta, Georgia 30363
Tel: 404-873-8500
Fax: 404-873-8501

Attorneys for Plaintiff

*Pro Hac Vice Applications Forthcoming*